BODEN, Respondent, v. TRANSIT CASUALTY COMPANY and others, Appellants.

*No. 133. Argued January 3, 1972.—Decided February 3, 1972.*
(Also reported in 193 N. W. 2d 839.)

804

For the appellants there were briefs by *Kluwin, Dunphy, Hankin & Hayes* of Milwaukee, and oral argument by *Gerald T. Hayes*.

For the respondent there was a brief by *Warshafsky, Rotter & Tarnoff,* attorneys, and *Ted M. Warshafsky* and *Michael I. Tarnoff* of counsel, all of Milwaukee, and oral argument by *Michael I. Tarnoff*.

ROBERT W. HANSEN, J. By motion after verdict, the defendants claimed error in the trial court ruling that had prevented them from showing the interest of plaintiff's employer in the outcome of the case. The trial court conceded the error, set aside the jury verdict as to damages and ordered a new trial on the damage issues only.

The court-conceded error came in regard to the testimony of one of plaintiff's witnesses, Donald Schaeffer, a supervisory employee of Borden, Inc., the plaintiff's employer.

As the trial court found, Borden, Inc., as plaintiff's employer ". . . will be entitled to a distribution for workmen's compensation payments received by the plaintiff, from the proceeds of any judgment recovered by the plaintiff in this lawsuit, under section 101.29, Stats. . . ."

As the trial court conceded, the defendants were entitled to make known to the jury the interest of Borden, Inc., in the outcome of the case for the purpose of attacking the credibility of witnesses employed by Borden, Inc. (*See: Johannsen v. Peter P. Woboril, Inc.* (1952), 260 Wis. 341, 347, 51 N. W. 2d 53.)

The trial court noted: ". . . Defendants maintain that the court was in error in not permitting them to question Mr. Schaeffer to show that he knew that his favorable testimony would benefit his employer. . . ."

The trial court concluded that it was in error in its ruling and that there must be a new trial on the damage issues only.

The trial court summarized the Donald Schaeffer testimony as relating ". . . to plaintiff's wages, to the reduced ability of the plaintiff in performing his work, to the cancellations by customers and the decision to terminate plaintiff's employment." Concluding that such testimony related to damages only, the trial court ordered a new trial on the damage issues only. As to wages, work and cancellations by customers, the relatedness to damages only is clear. As to what is termed testimony on "the decision to terminate," the error cannot be held to relate only to the issue of damages.

As to what was to happen to plaintiff's job with Borden, Inc., following the outcome of the lawsuit, the record shows these questions asked and answers given:

"A. [*Donald Schaeffer*] We will have to relieve him of his job.

". . .

"Q. [*Plaintiff's Counsel*] I think the record is clear as to what we mean by 'relieve.' Is there another way that you could express that so we are sure?

"A. [*Donald Schaeffer*] Well,—fired.

"Q. [*Plaintiff's Counsel*] Is there any inside job you could give him in place of this?

"A. [*Donald Schaeffer*] No, I couldn't.

"[*Defendants' Counsel*] For the record, your Honor, it's understood that any objection to this point of questioning is continuous?

"[*Plaintiff's Counsel*] It's so stipulated.

"*The Court:* All right.

"Q. [*Plaintiff's Counsel*] Mr. Schaeffer, you made some reference to the union. Has that been done or is that contemplated? What's the status of that?

"*A.* [*Donald Schaeffer*] At this point I have talked with the shop committee. I have had Jerry in to a shop committee meeting and I have shown them various things in Jerry's record that he is not doing. We have a letter written to Jerry and we have not found any change in his work, so *we were waiting to see the outcome of this case* too, as far as that goes. (Emphasis supplied.)

"*Q.* [*Plaintiff's Counsel*] Now, you say you were waiting to see the outcome on the case. I don't want your comments on the case but—

"[*Defendants' Counsel*] (interrupting) What was his answer, Mr. Manning?

"*The Court:* Read it back.

" (Last answer read by the Reporter) "

The reference (italicized for emphasis) to "waiting to see the outcome of this case" clearly permits, in fact, requires, the conclusion that the possible or probable loss of job was linked to the "outcome" of this action for personal injuries. Is the "outcome" of an action for personal injuries arising out of an intersection accident a reference only to the amount of damages that may be awarded? We think not. In fact, the reference is hardly, if at all, to the damage assessment phase of the litigation. Damages are assessed and payable dependent upon "outcome." While a personal injury action is not a prizefight, it has its winner and loser. The winner is the litigant found entitled to recover his damages. The loser is the litigant who cannot recover his own and must pay the other party's damages. The apportionment of negligence decides which is to be which; it determines the "outcome."

The testimony of the supervisory employee of plaintiff's employer established that the employer, and arguably the shop committee of the union as well, were "waiting to see the outcome of this case" before determining whether to terminate plaintiff's employment. The reach of such testimony went beyond the damages question.

Juries are not instructed nor presumed to know the legal consequences of their verdicts. However, when they have been told a party will lose his job depending on the outcome of a case, it would be naive to suggest the jury would not realize that a high apportionment of negligence against the litigant with a shaky job would constitute an unfavorable outcome for him, and a low assessment of negligence would provide a more favorable outcome. If this were all there was to the case, we would enter a discretionary reversal in the interest of justice, pursuant to sec. 251.09, Stats. The trial court ordered a new trial on damages to permit the defendants to attack the credibility of the Schaeffer testimony by showing the financial interest of Borden, Inc., in the outcome of the case, but we would order the new trial to be on the issue of negligence as well.

However, we find an accompanying error in the trial court holding, over the continuing objection of defendant's counsel, that it was proper to introduce evidence in a negligence action that a party to it will lose his job if he loses his case. Putting the best face upon it, this is entirely irrelevant to the issues which the jury is to consider. The jury is to determine, in an automobile collision case, whether either driver or both were causally negligent and, if both were, in what percentage. Additionally, the jury is to determine the damages sustained by the party or parties seeking recovery for damages. Whether a jury verdict finding or apportioning negligence may have an adverse effect upon the continued employment of one or both of the parties is not a relevant or proper addition to the mix of matters the jury is to resolve. In addition to irrelevancy, there is an obvious invitation to the jury to avoid a harsh consequence of a verdict by adjusting negligence percentages to accommodate a litigant whose job hangs in balance awaiting outcome of the case. Both litigants are entitled to a jury verdict as to negligence based on what did happen at the

time and place of the accident, and not at all affected by what may or may not happen to either of the litigants as a consequence of the jury verdict. Proper objection being made, the trial court should have stricken the Schaeffer statement that the employer was "waiting to see the outcome of this case" before seeking to discharge the plaintiff from its employment. The jury should have been instructed to disregard the statement.

Agreeing with the trial court that the testimony of the witness, Donald Schaeffer, was favorable to the plaintiff and that the defendants were entitled to show to the jury the interest of plaintiff's employer, for whom Schaeffer worked, in the outcome of the case, we hold that the prejudicial error affected more than the issue of damages. So holding, we affirm the trial court's judgment directing a new trial on the issue of damages, and reverse its denial of defendants' motion for a new trial on the issues as to negligence. The new trial here must be as to all issues.

*By the Court.*—Judgment affirmed in part, reversed in part, and cause remanded for a new trial on all issues.